# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN RAMIREZ, | 1:06-CV-01029 OWW SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KEN CLARK, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Los Angeles, following his conviction by plea of guilty on January 25, 1987, to first degree murder in violation of Cal. Penal Code § 187(a). See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit 1. On May 9, 1988, Petitioner was sentenced to serve an indeterminate term of twenty-five years to life in state prison with the possibility of parole. Id.

On August 4, 2004, Petitioner attended a subsequent parole suitability hearing before the

1  California Board of Prison Terms (now the Board of Parole Hearings - "Board"). See Answer,
2  Exhibit 3. Petitioner participated in the hearing and was represented by counsel. Id. At the
3  conclusion of the hearing, the Board concluded Petitioner was suitable for parole. Id. at 47-52.

4  On December 18, 2004, after considering the parole decision of the Board, the Governor
5  reversed the Board's decision and denied parole. See Answer, Exhibit 2.

6  Petitioner sought relief in the state courts. He filed a petition for writ of habeas corpus in
7  the Los Angeles County Superior Court on February 15, 2005. The petition was denied in a
8  reasoned decision on April 25, 2005. See Answer, Exhibit 5. He then filed a habeas petition in
9  the California Court of Appeals on June 24, 2005. See Answer, Exhibit 6. That petition was
10 summarily denied on August 11, 2005. Id. Finally, he filed a petition for review in the California
11 Supreme Court on September 9, 2005; that petition was summarily denied on June 21, 2006. See
12 Answer, Exhibit 7.

13 Petitioner filed the instant petition for writ of habeas corpus on July 18, 2006, in the
14 United States District Court, Central District of California. The petition was transferred to this
15 Court on August 1, 2006. The petition challenges the Governor's 2004 decision reversing the
16 Board's grant of parole.

17 On January 22, 2007, Respondent filed an answer to the petition. Respondent concedes
18 Petitioner has exhausted his state remedies and the petition is timely. Petitioner filed a traverse
19 on April 27, 2007.

## FACTUAL BACKGROUND[1]

21 On January 25, 1987, Petitioner invited his friend to assist him in committing a robbery.
22 They noticed two people standing next to a car in a parking lot. They approached the two
23 individuals whereupon Petitioner pulled out a gun and demanded money and the keys to the car.
24 The victims refused and a struggle ensued. Petitioner shot one of the victims twice, once in the
25 chest and once in the back; he shot the other victim once in the back. When Petitioner turned to
26 run, he tripped and fell. The victim who had been shot once ultimately obtained possession of the

---

[1] The facts are derived from the transcript of Petitioner's parole hearing of 2004. See Answer, Exhibit 3.

gun, and nearby witnesses restrained Petitioner until police arrived.  Petitioner's accomplice escaped but was later apprehended. The victim who had been shot twice was transported to the hospital where he was pronounced dead. The other victim survived.

## DISCUSSION

I.    Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

1  § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

2  As a threshold matter, this Court must "first decide what constitutes 'clearly established
3  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
4  *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this
5  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
6  of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other
7  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
8  principles set forth by the Supreme Court at the time the state court renders its decision." Id.

9  Finally, this Court must consider whether the state court's decision was "contrary to, or
10 involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at
11 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may
12 grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]
13 Court on a question of law or if the state court decides a case differently than [the] Court has on a
14 set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.
15 at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the
16 state court identifies the correct governing legal principle from [the] Court's decisions but
17 unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at
18 413.

19 "[A] federal court may not issue the writ simply because the court concludes in its
20 independent judgment that the relevant state court decision applied clearly established federal
21 law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.
22 A federal habeas court making the "unreasonable application" inquiry should ask whether the
23 state court's application of clearly established federal law was "objectively unreasonable." Id. at
24 409.

25 Petitioner has the burden of establishing that the decision of the state court is contrary to
26 or involved an unreasonable application of United States Supreme Court precedent. Baylor v.
27 Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the
28 states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.   Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). In the state parole context, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision must be supported by "some evidence" having an indicia of reliability. Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128.  In determining whether the "some evidence" standard is met, this Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id.  Rather, this Court must determine whether there is any evidence in the record that could support the conclusion reached by the Governor. Id., *citing* Superintendent v. Hill, at 455-56.  Although Hill

involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the parole board is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was represented by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the Board's reasons. See Answer, Exhibit 3. All of this information was submitted to the Governor and considered in his decision. See Answer, Exhibit 2.

Petitioner, however, contends the Governor's decision was arbitrary, capricious, and had no evidentiary support. After reviewing the record, the Court finds that the state court rejection of Petitioner's claims was not unreasonable, because the Governor's decision is supported by at least "some evidence."

Title 15, of the California Code of Regulations, Section 2402(c) sets forth certain negative factors which the Board would consider in determining whether Petitioner is suitable for parole.

Section 2402(c) provides:

> Circumstances Tending to Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:
>
>> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>>
>>> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>>>
>>> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>>>
>>> (C) The victim was abused, defiled or mutilated during or after the offense.
>>>
>>> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>>>
>>> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>>
>> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>>
>> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.
>>
>> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>>
>> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>>
>> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

15 Cal.Code Regs. § 2402(c).

In reversing the Board's decision, the Governor considered and found several factors indicating unsuitability per § 2402(c). Primarily, the Governor relied on the circumstances of the commitment offense itself. Pursuant to § 2402(c)(1)(A), the Governor noted that multiple victims were attacked in the same incident. This finding is supported by the evidence, as Petitioner shot two individuals in his attempt to commit a robbery. The Governor also found that the motive was

very trivial in relation to the offense under § 2402(c)(1)(E). This finding is supported by the fact that Petitioner killed someone and severely injured a second person for the purpose of obtaining their wallets and car keys.

The Governor also found Petitioner had engaged in negative behavior and misconduct while incarcerated. Petitioner had been disciplined three times for serious misconduct, most recently in 1991, and he had been counseled twice for minor misconduct, most recently in 2000. Pursuant to § 2402(c)(6), the Governor properly relied on these circumstances as negative indicators of suitability.

The Governor also found several positive factors in Petitioner's background under § 2402(d). The Governor noted that Petitioner had participated in vocational and educational programs; however, the Governor noted his participation was limited, but this was understandable given Petitioner had lost his eyesight while incarcerated. See § 2402(d)(9). Petitioner had also participated in and completed several self-help and therapy programs. Id. Nevertheless, the Governor found Petitioner did not have realistic parole plans upon release. See § 2402(d)(8). He had no employment prospects or plans for vocational training toward future employment. His plans consisted of relying entirely on his mother for support, transportation and housing. Given this was the situation Petitioner was in when he committed his crime, this factor was understandably important.

It is apparent the Governor considered all relevant evidence in this case and carefully balanced and assessed the various factors, and the findings were supported by at least "some evidence."

Petitioner also contends the Governor is relying solely on the immutable circumstances of the underlying offense and his criminal history prior to incarceration. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Although a denial of parole initially can be justified by relying on the gravity of the offense, over time, "should [the prisoner] continue to demonstrate exemplary behavior and

8

evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole." Irons v. Carey, ___ F.3d ___, 2007 WL 2027359 *5 (9th Cir. 2007), *citing* Biggs, 334 F.3d at 916. Nevertheless, in both Irons and Biggs, the Ninth Circuit upheld the denials of parole based solely on the commitment offense. This was because in each of these cases the prisoner had not yet served the minimum term of his sentence. Here, at the time the Governor reversed the Board's decision, Petitioner had only served 17 years of his 25 years-to-life sentence. Therefore, the due process concerns noted in Biggs are not at issue in this case. Moreover, the circumstances of the offense, while significant, were not the only reasons for the Governor's decision. The Governor also relied on Petitioner's institutional misconduct and lack of realistic parole plans in denying parole.

Finally, Petitioner claims the Governor's decision violated his plea agreement. Petitioner argues he pleaded guilty with the understanding he would be paroled if the Board granted his parole. He claims that article V, section 8(b) of the California Constitution, which authorizes the Governor to review the Board's recommendation, violates the Ex Post Facto Clause by increasing his punishment. This claim has been rejected by the state and federal courts. Connor v. Estelle, 981 F.2d 1032, 1033 (9th Cir.1992); In re Duarte, 143 Cal.App.3d 943, 951 (1983). The Governor's review process does not increase the punishment for the offense; it merely changes the identity of the official making the final determination. Johnson v. Gomez, 92 F.3d 964, 967 (9th Cir.1996).

In light of the above, it cannot be said that the state court resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

///

///

///

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and

2. Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to United States District Court Judge Oliver W. Wanger, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   November 19, 2007**            /s/ Sandra M. Snyder
                                          UNITED STATES MAGISTRATE JUDGE